IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JACOB THOMAS EARLS                                                 PLAINTIFF

V.                       No. 5:12CV00219 JLH-BD

ROBBIE FREAD, *et al.*                                          DEFENDANTS

## RECOMMENDED DISPOSITION

**I.**    **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail all objections and any "statement of necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## II.    **Background:**

Jacob Thomas Earls, formerly an Arkansas County Detention Center ("Detention Center") inmate, filed his *pro se* Complaint under 42 U.S.C. § 1983, claiming that Detention Center officials acted with deliberate indifference to his medical needs. He named as Defendants Jail Administrator Robbie Fread, Jailer Cotton Shadwick, Deputy Sheriff Jimmy Carr, and Deputy Sheriff Brad Bazarow.

Defendants have now moved for summary judgment on Mr. Earls's claims against them. Mr. Earls has not responded to the Defendants' motion and the time for doing so has passed.

Based on the undisputed evidence presented, the motion for summary judgment (#20) should be GRANTED, and Mr. Earls's claims should be DISMISSED, with prejudice.

## III.   **Discussion:**

### A.    Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). When a plaintiff cannot come forward with enough evidence to establish a necessary element of her claim, the moving party is entitled to judgment as a matter of law on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

  B. Official Capacity Claims

Mr. Earls's claims against the Defendants in their official capacities are claims against the County - in this case, Arkansas County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). In *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978), the Supreme Court held that local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. Instead, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom. *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009). A "policy" is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove the existence of a

continuing pattern of unconstitutional misconduct, not a single act. *Id*. at 902–903. Here, Mr. Earls has not set forth facts to show that Arkansas County has an unconstitutional policy or custom. Accordingly, his claims against the Defendants in their official capacities fail as a matter of law.[1]

### C.  Defendants Shadwick, Carr, and Bazarow

In their motion, Defendants argue that Mr. Earls has failed to allege or present any evidence that Defendants Shadwick, Carr or Bazarow were involved in his medical treatment at the Detention Center. Although Mr. Earls claims that Defendants Carr and Bazarow were responsible for damaging his albuterol inhaler, he has failed to present any evidence that such conduct was intentional. Mere negligence is insufficient to establish a constitutional violation. *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005). Further, he does not appear to attribute any unconstitutional conduct to Defendant Shadwick. Accordingly, his claims against Defendants Shadwick, Carr, and Bazarow fail.

### D.  Deliberate-Indifference Claim

Mr. Earls claims that the Defendants denied him medical treatment for his hernia and that they broke his albuterol inhaler. But he has not presented sufficient evidence for

---

[1] In his Complaint, Mr. Earls mentions "Ordinance 2010-14," which established the inmate health care policy at the Detention Center. According to the Ordinance, inmates are required to pay a $25.00 co-pay for any "prisoner initiated medical services" and a $20.00 co-pay for all prescription medications. Because Mr. Earls does not appear to complain that this policy is unconstitutional, nor does he present any proof to support such a claim, this claim fails.

the Court to find that the named Defendants acted with deliberate indifference to his medical needs.

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To show the prison officials failed to provide adequate medical treatment, Mr. Earls must prove "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).

1.  Hernia

It is undisputed that in November 2011, Mr. Earls was released from the Detention Center after being diagnosed with a hernia. (#21-1 at p.1) He was later arrested again and housed at the Detention Center. (#21-1 at p.1) On March 13, 2012, Mr. Earls filed his first grievance complaining about a hernia. (#21-1 at p.1) The next day, he was examined by Ms. West (not a party to this lawsuit). (#21-4) On March 16, 2012, he filed a medical request complaining about Ms. West and requesting to see a different doctor. (#21-4) In response to his request, Mr. Earls was notified that if he wanted to be examined by an independent private physician, his family would need to schedule such an appointment and would be financially responsible for the same. (#21-4) Later that day, Mr. Earls filed a similar medical request. (#21-5)

On March 21, 2012, Mr. Earls filed another medical request. (#21-6) He was notified that he had been scheduled for an appointment. (#21-6) Mr. Earls was seen by Dr. Heister on March 21, 2012, and March 22, 2012; and he was seen by Nurse West on March 23, 2012. (#21-3 at p.1)

On March 28, 2012, Mr. Earls filed another medical request complaining about his hernia and explaining that someone had made an appointment for him to be examined by his primary care physician. (#21-7) In response, Mr. Earls was notified that he should make an appointment with the County's doctor. (#21-7)

Mr. Earls was seen again by Ms. West on April 6, 2012, and was examined by his

personal physician, Dr. Ottmann, on June 28, 2012.  (#21-3 at pp.1-2)  Further, Mr. Earls also was examined by Dr. Hord on May 29, 2012, and again by Nurse West on May 30, 2012, June 4, 2012, June 20, 2012, July 18, 2012, and July 23, 2012.  (#21-3 at pp.1-3) According to Defendant Fread, although Mr. Earls's physicians confirmed that he had a hernia, they concluded that it was not large enough to require surgery.  (#21-1 at pp.1-2)

Because Mr. Earls has not presented any evidence to indicate that he is currently suffering from any health issues due to his hernia, and because his condition was consistently monitored while he was housed at the Detention Center, he has failed to prove that the Defendants acted with deliberate indifference to his medical needs.  The Defendants promptly responded to his medical requests and provided him access to multiple medical providers.  As a result, Mr. Earls has failed to create a genuine issue of material fact on this issue and Defendants are entitled to judgment as a matter of law on this claim.

      2.     Albuterol Inhaler

Mr. Earls also claims that in May of 2012, while he was working on the litter crew, Defendants Carr and Bazarow broke his inhaler when they threw his vest containing the inhaler into the back of a truck.  Mr. Earls alleges that when he told Defendant Fread that he needed another inhaler, Defendant Fread informed him that he would be responsible for paying for the replacement.

According to Defendant Fread, the inhaler that was broken did not have Mr.

Earls's name on it, and Mr. Earls did not possess an inhaler when he was taken into custody. (#21-1 at p.2) The undisputed evidence shows that in June 2012, he received a new inhaler. (#21-3 at p.2) Mr. Earls has failed to present any evidence that any of the named Defendants intentionally broke his inhaler or failed to respond to his medical grievances regarding the inhaler. Finally, although Mr. Earls apparently was without an inhaler for nearly seven weeks, he has failed to present any evidence that he suffered any injury as a result of any such delay. Accordingly, Defendants also are entitled to judgment as a matter of law on this claim.

### IV. Conclusion:

The Court recommends that the Defendants' motion for summary judgment (#20) be GRANTED and that Mr. Earls's claims be DISMISSED, with prejudice.

DATED this 1st day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE